D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CONNIE RODRIGUEZ, on behalf of herself and others similarly situated,

                Plaintiff,

        v.

MANHATTAN RIVER GROUP, LLC, JERALD TENENBAUM, JOSH ROSEN, and ANDREW WALTERS,

                Defendants.

------------------------------------------------------------x

**COMPLAINT and JURY DEMAND**

**CASE NO.:**

**FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION**

Plaintiff Connie Rodriguez alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

3. All Defendants are hereinafter collectively referred to as "Defendants."

4. Defendant Manhattan River Group, LLC is a New York corporation that owns and operates La Marina Restaurant/Nightclub located in Inwood, NY.

5. Upon information and belief, Manhattan River Group, LLC has an annual gross volume of sales in excess of $500,000.

6. Manhattan River Group, LLC is owned and operated by, *inter alias,* Defendants Jerald Tenenbaum and Josh Rosen (the "Owner Defendants").

7. The Owner Defendants exercise sufficient control of the restaurant's 'day to day operations to be considered Plaintiff's employer under the FLSA and New York law.

8. The Owner Defendants are actively involved in managing the restaurant.

9. The Owner Defendants are often present at the restaurant overseeing the restaurant's operations.

10. The Owner Defendants have ultimate authority over all decisions at the restaurant, and they frequently consult with the restaurant's general managers to discuss day-to-day issues.

11. The Owner Defendants played a role in determining the payroll practices that are the subject of the instant action.

12. To the extent the restaurant maintains payroll records, the Owner Defendants are responsible for the maintenance of such records.

13. Defendant Andrew Walters is a Director of Nightlife at La Marina.

14. Plaintiff Connie Rodriguez worked for Defendants as a bartender in the summer of 2016 and for several days in 2017, until she was terminated.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all service employees, other than service managers, employed by La Marina on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective").

16. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to La Marina's decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them properly for all hours worked. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from the La Marina. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to La Marina.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18. Plaintiff brings the state law Second, Third, Fourth and Fifth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all service employees, other than service managers, employed by La Marina on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

19. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from La Marina's records. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from La Marina's records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from La Marina. Notice can be provided by means permissible under said F.R.C.P. 23.

20. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of La Marina, upon information and belief, there are more than sixty (60) members of the Class.

21. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of La Marina, as alleged herein, of failing to pay all minimum wage, spread of hours premiums, and failing to provide Class members with required wage notices. La Marina's corporate-wide policies and practices affected all Class members similarly, and La Marina benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced

and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against La Marina. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for La Marina and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Upon information and belief, La Marina and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

25. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law.

b) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work.

c) The policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Plaintiff and the Class members at all.

d) Whether Defendants paid Plaintiff and the Class members the appropriate minimum wage for all hours worked.

e) Whether Defendants paid Plaintiff and the Class members New York's spread of hours premium.

f) Whether Defendants gave Plaintiff and the Class members the wage statements required by New York Labor Law § 195 and the New York Hospitality Wage Order.

g) Whether Defendants filed false reports with the Internal Revenue Service with respect to Plaintiff and the Class Members.

## FACTS

### Wage and Hour Allegations

26. Defendants knew that nonpayment of minimum wage would economically injure Plaintiff and violated federal and state laws.

27. Plaintiff worked as a bartender at the beach section of La Marina Restaurant during the summer months of 2016 and for a few days in 2017.

28. During Plaintiff's working season, she typically worked weekends, Friday through Sunday, and Mondays on long weekends.

29. Plaintiff's shifts often lasted longer than 10 hours, starting at 11:00 a.m. and continuing past midnight.

30. Defendants did not pay Plaintiff any hourly wage. Her sole compensation was the tips she received from customers.

31. Defendants did not give Plaintiff weekly wage statements outlining her pay, as required by the New York Labor Law.

32. Defendants did not give Plaintiff the Notice and Acknowledgement of Pay form required by the New York Labor Law.

33. Defendants issued and IRS form W2 to Plaintiff for the year 2016. The W2 reflected wages paid to Plaintiff even Plaintiff received no wages at all. Upon information and belief, Defendants filed this W2 with the IRS.

34. Defendants committed the foregoing acts willfully and against Plaintiff, the FLSA Collective Plaintiffs, and the Class members.

### Sex Harassment/Wrongful Termination

35. Defendant Andrew Walters frequently made unwelcome sexual advances toward Plaintiff.

36. For example, before the July 4th weekend in 2016, Plaintiff informed Walters that she would be out of town for the weekend.

37. Defendant Walters told Plaintiff that if she took the weekend off, she would not have at job at La Marina when she returned.

38. Defendant Walters ultimately changed his mind, and explained to Plaintiff in substance, "Don't worry about. It's just that the weekend will suck without you. I have a way of falling in love with people, but then I get over it."

39. Defendant Walters often touched Plaintiff inappropriately, including putting his arm around Plaintiff in a sexual manner.

40. Plaintiff consistently told Defendant Walters not to touch her.

41. On one occasion, Defendant Walters propositioned Plaintiff to join him on a trip to Asia.

42. Plaintiff refused Defendant Walters' proposition.

43. Defendant Walters often invited Plaintiff to a bar "near [his] apartment" in the Meatpacking District.

44. Plaintiff consistently refused and made clear that Defendant Walters' advances were unwelcome.

45. After the summer of 2016, Plaintiff and Defendant Walters went their separate ways, but Defendant Walters began to follow Plaintiff on Instagram.

46. When Plaintiff returned to work at La Marina on or about the weekend of May 26, 2017, Defendant Walters explained to Plaintiff how upset he was that Plaintiff was together with her boyfriend, something he presumably learned on Instagram. Defendant Walters stated, "I'm not even going to small talk with you anymore, because you're basically wifed up."

47. Defendant Walters later stated that he was "just kidding" and attempted to hug Plaintiff.

48. Given that Defendant Walters was Plaintiff's direct supervisor and the manager of the entire part of the restaurant at which Plaintiff worked, Defendant Walters' harassing behavior caused Plaintiff stress and embarrassment and made her working environment extremely difficult.

49. Later that evening, Plaintiff was at her bar talking with a security guard named Bruno. The restaurant was extremely quiet, as the usual evening traffic had not yet arrived.

50. During this conversation, Defendant Walters abruptly charged at Plaintiff and shouted, in front of anyone present, ""What are you gonna do, play with your pussy all day? Go do something go help the other bartenders. What are you, retarded?"

51. Plaintiff was humiliated by Defendant Walters' comments. Nevertheless, she finished her shift without incident.

52. The following Sunday May 28, Plaintiff arrived at work for her shift.

53. While Plaintiff was setting up, Defendant Walters crept up behind her and stood inappropriately close to her saying nothing while she worked for several minutes.

54. At 7:00 p.m. that evening, a security guard summoned Plaintiff and told her she was being escorted off of the property.

55. When Plaintiff asked why she was being escorted off of the property, the security guard simply stated that management instructed him to do so and that Plaintiff would have to speak with John Markowitz, the restaurant's manager, on Friday.

56. Plaintiff was again humiliated by Defendants' sick behavior and by the fact that she was being publicly escorted off of the property like a criminal.

57. The following Friday, Plaintiff met with John Markowitz. Plaintiff told Mr. Markowitz about Defendant Walters' egregious behavior. Mr. Markowitz did nothing to correct the issue. He tried to convince Plaintiff not to be offended at having been escorted out of the restaurant by security guards, because that was a regular occurrence. He then confirmed that Plaintiff's employment was terminated.

## FIRST CLAIM FOR RELIEF
**(FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.*)**
**(Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs)**

58. Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

59. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

60. At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay service employees at the minimum wage and willfully failing to keep records required by the FLSA.

61. Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
(New York Minimum Wage Violations
New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*,
N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4)
(Brought by Plaintiff on Behalf of Herself and the Class)

62. Plaintiff, on behalf of herself and the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

63. Defendants knowingly paid the Plaintiff and the Class Members less than the New York minimum wage as set forth in N.Y. Lab. Law § 652 and supporting regulations of the New York State Department of Labor.

64. Defendants did not pay Plaintiff and the Class Members less than the New York minimum wage for all hours worked.

65. As a result of Defendants' willful and unlawful conduct, Plaintiff and the Class Members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### THIRD CLAIM FOR RELIEF
(New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)
(Brought by Plaintiff on Behalf of Herself and the Class)

66. Plaintiff, on behalf of herself and the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

67. Defendants did not provide Plaintiff and the Class Members the correct notices and/or statements required by N.Y. Lab. Law § 195.

68.     As a result of Defendants' unlawful conduct, Plaintiff and the Class are entitled to an award of damages in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FOURTH CLAIM FOR RELIEF
(New York Spread of Hours Provisions, N.Y. Lab. L. § 650 *et seq.*,
N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6)
(Brought by Plaintiff on Behalf of Herself and the Class)

69.     Plaintiff, on behalf of herself and the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

70.     Plaintiff and the Class Members had workdays that lasted more than ten (10) hours.

71.     Defendants willfully and intentionally failed to pay Plaintiff and the Class Members one hour's pay at the basic New York minimum hourly wage rate when their workdays lasted more than ten (10) hours, as required by New York law.

72.     As a result of Defendant' willful and unlawful conduct, Plaintiff and the Class Members are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FIFTH CLAIM FOR RELIEF
(Internal Revenue Code, 26 U.S.C. § 7434)
(Brought by Plaintiff on Behalf of Herself and the Class)

73.     Plaintiff, on behalf of herself and the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

74.     Defendants willfully filed W-2 forms that were fraudulent with respect to Plaintiff's and Class Members' incomes.

75. As a result of Defendants' unlawful conduct, Plaintiff and the Class Members are entitled to an award of damages equal to the greater of $5,000 or the sum of his/her actual damages.

## SIXTH CLAIM FOR RELIEF
(New York City Human Rights Law ("NYCHRL")
N.Y. Admin. L. §§ 8-101 *et seq.* – Gender Discrimination)

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

77. In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of her gender.

78. As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income, including future salary.

79. Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress and physical pain and suffering.

80. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

81. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

82. A copy of this complaint will be provided to the New York City Commission on Human Rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

C. Designation of this action as a class action pursuant to F.R.C.P. 23.

D. Designation of Plaintiff as Representative of the Class.

E. An award of damages, according to proof, including liquidated damages and punitive damages, to be paid by Defendants;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees;

I. Pre-judgment and post-judgment interest, as provided by law; and

J. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all counts so triable.

Dated: New York, New York  
       July 6, 2017

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: _____  
D. Maimon Kirschenbaum  
32 Broadway, Suite 601  
New York, NY 10004  
Tel: (212) 688-5640  
Fax: (212) 688-2548

*Attorneys for Plaintiff*